UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COREY A. LANIER, | ) | CIVIL ACTION NO. 4:20-CV-1414 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| KILOLO KIJAKAZI,[1] | ) | |
| *Acting Commissioner of Social Security* | | |
| Defendant | | |

MEMORANDUM OPINION

## I.    INTRODUCTION

Plaintiff Corey Lanier, an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g), 28 U.S.C. § 636(c), and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  She is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "the officer's successor is automatically substituted as a party."); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

administrative transcript, I find the Commissioner's final decision is supported by substantial evidence. Accordingly, the Commissioner's final decision must be AFFIRMED.

## II.    BACKGROUND & PROCEDURAL HISTORY

On May 5, 2017, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 20; Doc. 15-2, p. 21).  In this application, Plaintiff alleged he became disabled as of November 22, 2013, when he was thirty-nine years old, due to the following conditions: glaucoma, depression, severe spinal stenosis of the lumbar region, severe asthma, degenerative disc disease, learning disability, and anger issues. (Admin. Tr. 20, 31, 189; Doc. 15-2, pp. 21, 32; Doc. 15-6, p. 14). Plaintiff alleges that the combination of these conditions affects his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, see, complete tasks, concentrate, understand, follow instructions, get along with others, and his memory. (Admin. Tr. 220; Doc. 15-6, p. 45).

Plaintiff has obtained his GED. (Admin. Tr. 48; Doc. 15-2, p. 49). Before the onset of his impairments, Plaintiff worked as a cashier, cutting machine tender, material handler, team leader, production assembler, dishwasher, forklift operator, and a short order cook. (Admin. Tr. 31; Doc. 15-2, p. 32).

On October 27, 2017, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 123-27; Doc. 15-4, pp. 2-6). On December 18,

2017, Plaintiff requested an administrative hearing. (Admin. Tr. 128; Doc. 15-4, p. 7).

On April 10, 2019, Plaintiff, assisted by his counsel, appeared and testified during a hearing before Administrative Law Judge Charles A. Dominick (the "ALJ"). (Admin. Tr. 20, 33; Doc. 15-2, pp. 21, 34). On July 17, 2019, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 33; Doc. 15-2, p. 34). On September 10, 2019, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 14; Doc. 15-2, p. 15). Plaintiff did not submit new substantive information to the Appeals Council.[2]

On July 1, 2020, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1; Doc. 15-2, p. 2).

On August 11, 2020, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence, and improperly applies the relevant law and regulations. (Doc. 1, p. 2). As relief, Plaintiff requests that the Court (1) reverse the decision of the Defendant and find that the Plaintiff is entitled to disability benefits

---

[2] The new evidence submitted was (1) a request for the Appeals Council to review the ALJ's opinion and (2) a brief in support of Plaintiff's appeal. (Admin. Tr. 4; Doc. 15-2, p. 5).

under the provisions of the Social Security Act; or (2) remand the case for further hearing and award attorney's fees. (Doc. 1, p. 2).

On March 2, 2021, the Commissioner filed an Answer. (Doc. 14). In the Answer, the Commissioner maintains that the ALJ's decision to deny Plaintiff benefits was made in accordance with the law and is supported by substantial evidence. (Doc. 14, p. 3). Along with his Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 15).

Plaintiff's Brief, (Doc. 16),[3] and the Commissioner's Brief, (Doc. 17), have been filed. Plaintiff did not file a reply brief. This matter is now ripe for resolution.

III.    STANDARDS OF REVIEW

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security appeals.

A.    SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

---

[3] Plaintiff's Brief does not have page numbers, in violation of Local Rule 5.1. So, I will refer to the page numbering placed on the upper right hand corner by all electronic filings by the CM/ECF system.

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v.*

*Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

B.   STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[4] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the

---

[4] Throughout this memorandum opinion, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on July 17, 2019.

insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. § 423(d)(5);

20 C.F.R. § 404.1512(a); *Mason*, 994 F.2d at 1064.  Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 404.1512(b)(3); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

Having reviewed the applicable legal standards, I now turn to the merits of this appeal.

IV.   DISCUSSION

A.   THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In his July 2019 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through December 31, 2017. (Admin. Tr. 33; Doc. 15-2, p. 34). Then, Plaintiff's application was evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between November 22, 2013 (Plaintiff's alleged onset date) and December 31, 2017 (Plaintiff's date last insured) ("the relevant period"). (Admin. Tr. 22; Doc. 15-22, p. 23). At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: stenosis and degenerative disc disease of the lumbar spine, asthma, right eye glaucoma, major depressive disorder, generalized anxiety disorder, learning disability, and schizophrenia. (Admin. Tr. 22; Doc. 15-2, p. 23). At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 22; Doc. 15-2, p. 23).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in

sedentary work as defined in 20 C.F.R. § 404.1567(a) subject to the following

additional limitations:

> . . . [Plaintiff] must have been given the opportunity to alternate
> between sitting and standing at least every thirty minutes. Additionally,
> he was limited to no more than occasional balancing, stooping,
> kneeling, crouching, and climbing on ramps and stairs but he could
> never crawl or climb on ladders, ropes, or scaffolds. The claimant must
> have avoided unprotected heights and dangerous moving machinery
> and avoided exposure to extreme temperatures, extreme humidity,
> wetness, and vibration. He must have avoided concentrated exposure to
> dusts, fumes, gases, and other pulmonary irritants. The claimant was
> limited to simple routine tasks, not performed at a production rate pace,
> and work requiring no more than simple work-related decisions with no
> more than occasional changes in the work setting. He was limited to no
> more than occasional interaction with supervisors, coworkers, and the
> public. Furthermore, the claimant must have been given the opportunity
> to wear sunglasses during work hours.

(Admin. Tr. 26; Doc. 15-2, p. 27).

At step four, the ALJ found that, during the relevant period, Plaintiff could

not engage in his past relevant work. (Admin. Tr. 31; Doc. 15-2, p. 32). At step five,

the ALJ found that, considering Plaintiff's age, education and work experience,

Plaintiff could engage in other work that existed in the national economy. (Admin.

Tr. 32; Doc. 15-2, p. 33). To support his conclusion, the ALJ relied on testimony

given by a vocational expert ("VE") during Plaintiff's administrative hearing and

cited the following three (3) representative occupations: document preparer, DOT

code 249.587-018; small products assembler, DOT code 739.687-030; and stuffer,

DOT code 731.685-014. (Admin. Tr. 32; Doc. 15-2, p. 33).

Plaintiff contends that the ALJ erred in the following four respects:

1.   In formulating the RFC because the ALJ failed to properly consider his complaints of pain;
2.   By failing to address a thirty-party function report from Plaintiff's fiancé, and the medical opinion of Physician Assistant Bright;
3.   The ALJ failed to properly account for Plaintiff's vision problems in the hypothetical provided to the vocational expert; and
4.   The ALJ did not properly account for Plaintiff's cane use in the hypothetical provided to the vocational expert.

(Doc. 16, p. 12). I will discuss each in turn.

B.   DID THE ALJ ERR IN HIS CREDIBILITY DETERMINATION?

Plaintiff launches a multi-pronged attack on the ALJ's credibility determination, arguing that (1) the ALJ did not address certain evidence in deciding credibility and (2) that he ALJ mischaracterized Plaintiff's activities of daily living to his detriment. (Doc. 16, pp. 13-16). I'll address each in turn.

1.   Did the ALJ Exclude Evidence?

Plaintiff alleges that the ALJ erred in his credibility determination because he did not cite to the following pieces of evidence:

- A December 7, 2016 visit with Jordan Bright PA-C, who noted on physical exam that Plaintiff had mild to moderate spasm of the paralumbar muscles. (Admin. Tr. 360; Doc. 15-8, p. 48).

- A December 7, 2016 lumbar x ray that showed severe degenerative disk disease of L5-S1. (Admin. Tr. 381; Doc. 15-8, p. 70).

- Consultive examiner Ahmed Kneifati's September 22, 2017 exam, who noted that Plaintiff had a positive right and left straight leg test in both the sitting and supine positions. (Admin. Tr. 442; Doc. 15-9, p. 8).

- Medical notes from an August 9, 2017 physical therapy session showed that Plaintiff displayed pain, weakness, decreased range of motion, joint hypomobility, and poor postural control. (Admin. Tr. 580, Doc. 15-10, p. 44).

- Amelia Hart, PA-C's treatment notes from a March 6, 2017 visit, who noted that Plaintiff had an abnormal MRI, tight hamstrings, and limited low back range of motion. (Admin. Tr. 339-40; Doc. 15-8, pp. 28-29).

- Dr. Chulhyn Ahn's April 27, 2018 (after the relevant period) medical notes, who noted Plaintiff showed a positive straight leg test on the right leg and deceased range of motion in the lumbar spine. (Admin. Tr. 911; Doc. 15-15, p. 53).

As the Commissioner points out, the ALJ did discuss and cite to at least two pieces of allegedly excluded records: Plaintiff's MRI and Dr. Kneifati's report and opinion. (Admin. Tr. 28; Doc. 15-2, p. 29) ("An MRI of his lumbar spine showed severe degenerative disc disease."); (Admin. Tr. 29-30; Doc. 15-2, pp. 30-31) (summarizing Dr. Kneifati's consultative report and opinion). Regardless, an ALJ is under no obligation to address every piece of evidence in the record. *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d. Cir. 2004). And in this case, the ALJ dedicated

a substantial portion of his opinion in discussing Plaintiff's medical history involving his lower back, and why his statements about the severity of his impairments did not align completely with the medical record. Further, the ALJ does not skimp on citing evidence favorable to the Plaintiff, as he extensively cites medical evidence on Plaintiff's weakness, "severe lumbar disc degeneration," spinal stenosis, numbness, and tingling. So, any arguments of cherry picking fall flat. The ALJ appropriately crafted an extremely restrictive RFC. As such, the mere failure to address all favorable evidence to Plaintiff is not a reversible error.

### 2. Activities of Daily Living

Plaintiff argues that the ALJ mischaracterized his activities of daily living, which the ALJ cites to support his finding that Plaintiff's testimony is not credible. (Doc. 16, pp. 14-16). The Commissioner attempts to minimize this by arguing that the ALJ also relied on "clinical evidence, medical opinions, and other evidence of record." (Doc. 17, p. 19). I agree with Plaintiff that the ALJ mischaracterized Plaintiff's activities of daily living. However, this is a harmless error.

In deciding whether Plaintiff's statements were credible, the ALJ found that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with [the evidence]." (Admin. Tr. 27; Doc. 29, pp. 28-29). The ALJ found Plaintiff's statements to be

inconsistent because Plaintiff's medical treatment was conservative, and that Plaintiff's activities of daily living suggested he was capable of full-time work. (*Id.*).

I agree with Plaintiff that the ALJ erred when he mischaracterized Plaintiff's activities of daily living.  I'll explain each.

*Preparing meals and cooking*. Plaintiff reports that he cooks his own meals, but only "anything microwavable." (Admin. Tr. 217; Doc. 15-6, p. 42). This takes him "a few minutes," daily. (*Id.*).

*Childcare*. Plaintiff shares custody of two kids. He sees them on Wednesdays and Sundays. (Admin. Tr. 66; Doc. 15-2, p. 67). His son is 14, his daughter is 13. (*Id.*). Since his kids are teenagers, they are presumably self-sufficient.

*Cleaning and laundry*. Plaintiff reports he is able to sweep, mop, and do laundry at his own pace. (Admin Tr. 217; Doc. 15-6, p. 42). But, he can only do one of these chores a day, and "it usually takes a whole day for [him] to complete any of them [;] sometimes longer due to pain." (*Id.*).

*Shopping in stores*. Plaintiff shops for "food and clothes, sometimes, only when its truly needed." (Admin. Tr. 218; Doc. 15-6, p. 43). He "shops small and knows what he needs so he can be in and out." (*Id.* (cleaned up)). His fiancé reports that Plaintiff shops very rarely because he is limited by his back pain. (Admin Tr. 209; Doc. 15-6, p. 34).

*Driving*. He drives occasionally, but "tr[ies] to do it pretty much during the daytime." (Admin Tr. 65; Doc. 15-2, p. 66).

Based on an examination of the record, the ALJ appears to have mischaracterized almost all of Plaintiff's activities of daily living, which in turn supported an adverse credibility finding.[5] Next I must decide if this is a harmless error.

Remand is not required unless there is reason to believe that it might lead to a different result. *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989); *see also Snedeker v. Colvin*, No. 3:13-CV-970, 2015 WL 1126598 at *7 (N.D.N.Y. Mar. 12, 2015) ("a reviewing court must reverse and remand when an administrative law judge errs when reaching a decision, unless, as a matter of law, the result could not be affected by the error. In other words, administrative legal error is harmless when a reviewing court confidently concludes that the same result would have been reached had the error not occurred.") (internal citations omitted). In showing harmless error, a plaintiff carries the "burden of explaining how a more detailed discussion of his [impairment] inevitably would have led the ALJ to craft a more restrictive RFC finding." *Receveur v. Saul*, No. 18-cv-07927, 2019 U.S. Dist. LEXIS

---

[5] Given that federal courts give ALJs wide discretion to decide creditability, the ALJ's decision to use Mr. Lanier's ability to drive to support his decision was acceptable, because he did not mischaracterize Plaintiff's driving ability. However, in light of the ALJ's mischaracterizations in the four other activities of daily living, the ALJ nonetheless committed an error.

175496, at *32 (D.N.J. Oct. 8, 2019) (citing *Woodson v. Comm'r of Soc. Sec.*, 661 F. App'x 762, 766-67 (3d Cir. 2016)); *Gullace v. Colvin*, No. 15-cv-7630, 2017 WL 714356, at * 32-33 (D.N.J. Feb. 23, 2017) ("[b]ecause Plaintiff has merely offered a generalized response . . . he has failed to meet his burden, as such, this Court finds the ALJ's error to be harmless").

In this case, the mischaracterization is harmless error because the ALJ provided other reasons for his credibility finding, namely, the fact that Plaintiff only receives conservative treatment, "consisting primarily of medication management other than sporadic physical therapy; there is no treatment documented prior to 2015." *See Smith v. Saul*, No. 18-783, 2020 WL 430779, at *7-8 (E.D. Va. Jan. 28, 2020) (the failure to consider activities of daily living was harmless error when the ALJ also held that Plaintiff's credibility was undermined by plaintiff's conservative treatment.). While Plaintiff argues that the ALJ failed to discuss certain pieces of evidence, he does not dispute the ALJ's reasoning on Plaintiff's conservative treatment. Given that the ALJ based his credibility finding on more than just Plaintiff's activities of daily living, I find that it is harmless error.

C.    DID THE ALJ ERR WHEN HE FAILED TO CONSIDER A THIRD PARTY FUNCTION REPORT AND A STATEMENT FROM PA-C BRIGHT?

Plaintiff argues that the ALJ failed to discuss two pieces of evidence in his opinion: (1) the medical opinion of physician assistant Jordan Bright, and (2) a third party function report from Plaintiff's girlfriend. (Doc. 16, pp. 16-17). The

Commissioner argues that respectively, Ms. Bright's "opinion" is not the type of medical opinion that must be addressed by regulation, and the ALJ did address the third party function report in his opinion. (Doc. 17, pp. 21-22). In this instance I agree in whole with the Commissioner.

### 1.    Consideration of Ms. Bright's Opinion

An ALJ must consider all medical opinions in the record and discuss their persuasiveness based on the following factors: the extent to which the medical source's opinion is supported by relevant objective medical evidence and explanations presented by the medical source (supportability); the extent to which the medical source's opinion is consistent with the record as a whole (consistency); length of the treatment relationship between the claimant and the medical source; the frequency of examination; the purpose of the treatment relationship; the extent of the treatment relationship; the examining relationship; the specialization of the medical source and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c); 20 C.F.R. § 416.920c(c); *Kromer v. Kijakazi*, No. 20-cv-6489, 2022 WL 125932, at * 6 (E.D. Pa. Jan. 13, 2022) ("an ALJ must consider all medical opinions. . . .").

However, "[t]he ultimate legal determination of disability is reserved for the Commissioner of Social Security." *Pintal v. Comm'r of Soc. Sec.*, 602 F. App'x 84, 87 (3d Cir. 2015) (citing 20 C.F.R. § 404.1527(d)). So, a conclusory medical opinion

that states a claimant is "disabled or unable to work" is not a medical opinion, and an ALJ does not have to discuss it. 20 C.F.R. § 404.1520b(c); *see also Mederos v. Colvin*, No. 14-cv-3800, 2015 WL 5167109, at *20-21 (D.N.J. Sept. 3, 2015) (an ALJ is not bound by a physician's opinion that a claimant cannot work because it "directly conflict[s] with the ALJ's exclusive adjudicatory authority to determine whether Plaintiff is disabled").

As applied here, Physician Assistant Jordan Bright's opinion that Plaintiff is "unable to work currently," is not a medical opinion under the relevant regulations. (Admin. Tr. 524; Doc. 15-9, p. 88). It is a conclusory statement on a subject that is reserved exclusively to the Commissioner. Ms. Bright does not offer an opinion on any other subject, such as if Plaintiff suffers from a specific functional limitation. And because an ALJ does not have to "discuss in its opinion every tidbit of evidence included in the record," it is not an error that the ALJ failed to address it in his opinion. *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d. Cir. 2004).

2.     Consideration of Ms. Nevius' Third Party Function Report

Plaintiff argues that the ALJ erred when he did not consider Michelle Nevius' third party function report. (Doc. 16, p. 17). However, I agree with the Commissioner that the ALJ actually did discuss the report. The ALJ first analyzes Ms. Nevius' report when he considers whether Plaintiff meets the listing criteria of paragraph b. (Admin. Tr. 24; Doc. 15-2, p. 25).

Next, in the RFC, the ALJ addresses Ms. Nevius' report, stating:

Michelle Nevius, the claimant's girlfriend with whom he was living, completed a third party function report at the same time, which indicated his severe back pain limited everything he did. She generally noted the same limitations and daily activities that he alleged himself.

(Admin. Tr. 26-27; Doc. 15-2, pp. 27-28) (internal citations omitted).

So, as applied here, despite what Plaintiff argues, the ALJ clearly addressed Ms. Nevius' third party function report. Accordingly, I find no reversible error on this point.

D.   DID THE ALJ ERR BY NOT ACCOUNTING FOR SOME OF PLAINTIFF'S VISION IMPAIRMENTS IN THE HYPOTHETICALS TO THE ALJ?

Next, Plaintiff argues that the ALJ failed to account for all of his vision limitations arising from his glaucoma. Specifically, Plaintiff claims he has two limitations because of his glaucoma, (1) he is sensitive to light, and (2) his depth perception is impaired. (Doc. 16, pp. 17-18). While the ALJ accounted for his light sensitivity by adding to the RFC the need for sunglasses, Plaintiff argues the ALJ erred by not asking the VE about a depth perception limitation. (*Id.*). The Commissioner offers three counter points: (1) that medical records do not support such a limitation, (2) Plaintiff has not carried his burden in showing the Commissioner erred, and (3) any error is harmless because the cited jobs by the VE do not require intact depth perception. (Doc. 17, pp. 23-25). I agree with the Commissioner.

While I acknowledge Plaintiff's concern about the lack of a depth perception limitation, any such limitation would come from his own testimony, as no medical provider opined that Plaintiff has a depth perception impairment. Nor do medical records, cited by Plaintiff or otherwise, point to a depth perception impairment. And while Plaintiff attacks the ALJ's credibility assessment because he supposedly ignored medical evidence regarding his lower back pain, Plaintiff does not attack the ALJ's credibility determination regarding Plaintiff's vision. It is within the preview of the ALJ to reject Plaintiff's testimony about the severity of his symptoms. 20 C.F.R. § 404.1529(c)(3). This is especially true in this case, based on the Court's review of the record. Plaintiff's vision records show that:

- On August 17, 2016, Plaintiff presented to Dr. Dane Stewart with redness, right eye pain, and blurry vision. (Admin. Tr. 376-77; Doc. 15-8, pp. 65-66). Dr. Stewart provided him with eye drops and oral medications. (*Id.*). On a follow up the next day, Plaintiff reported being "100% better vs yesterday." (Admin. Tr. 374; Doc. 15-8, p. 63).

- On a December 13, 2016 visit with Dr. Kinneri Kothari, Plaintiff reports that he has no pain or redness, but complains that "his vision isn't quite perfect today." (Admin. Tr. 355-56; Doc. 15-8, pp. 44-45). Plaintiff's vision acuity was 20/25 on the right and 20/20 on the left. (*Id.*). Plaintiff also had full visual fields and full extraocular movement. (*Id.*).

- On a February 23, 2017 visit with Dr. Dane Stewart, Plaintiff reported blurry vision, but his visual acuity was 20/30 on the right and 20/20 on the left, with full visual fields and full extraocular movement. (Admin. Tr. 346-48; Doc. 15-8, pp. 35-37).

- On a March 3, 2017 follow up visit with Dr. Kinneri Kothari, Plaintiff had a visual acuity of 20/40-1; 20/20; 20/30 in his eyes, full visual fields, and full extraocular movement. (Admin. Tr. 343-344; Doc. 15-8, pp. 32-33). All other test results were generally normal. (*Id.*).

- On an April 17, 2017 follow up, Dr. Dane Stewart noted that Plaintiff was "[d]oing well, IOP stable." (Admin. Tr. 330-32; Doc. 15-8, pp. 19-21). Plaintiff did not report any vision changes but did complain of "some light sensitivity." (*Id.*).

- On a May 5, 2017 visit with Dr. Kinneri Kothari, Plaintiff reported that his vision was intermittently blurry. (Admin. Tr. 316-18; Doc. 15-8, pp. 6-8). On this visit, Plaintiff had a visual acuity of 20/40-1 on the right and 20/20-1 on the left. Plaintiff had full visual field and full extraocular movement. (*Id.*).

Plaintiff's objective medical evidence shows that that providers noted normal vision tests on exam. And while I acknowledge that Plaintiff occasionally complained of blurry vision, it was considered by the ALJ, (Admin. Tr. 28; Doc. 15-2, p. 29), but the ALJ found that it did not require an additional limitation in the RFC

because it was controlled with medication. Based on the review of the record, this was a reasonable decision.

Regardless, as the Commissioner argues, even if the ALJ did err in failing to account for Plaintiff's vision impairment, it is harmless error. Of the three representative jobs that the VE testified Plaintiff could perform, two of them do not require depth perception. *See* Document Preparer, Microfilming, DOT No. 249.587-018, 1991 WL 672349 ("Depth Perception: Not Present – Activity or condition does not exist"); Stuffer, DOT No. 731.685-014, 1991 WL 679811 ("Depth Perception: Not Present – Activity or condition does not exist"). And while one job would require it, that would still leave Plaintiff with two representative jobs in the national economy. *Sanchez v. Colvin*, No. 13-cv-2479, 2014 WL 5147793, at *39 (M.D. Pa. Oct. 14, 2014) (holding it is harmless error when two of three representative jobs do not require a particular ability). Finally, combined, there is a significant number of document preparer (21,000) positions and stuffer (15,000) positions in national economy that would allow Plaintiff to exercise his abilities. (Admin. Tr. 32; Doc. 15-2, p. 33); 20 C.F.R. § 404.1566(b) ("[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [the claimant] is able to meet with [his abilities]"); *Young v. Astrue*, 519 F. App'x 769, 772 (3d Cir. 2013) (finding that 20,000 jobs is a significant number).

In sum, the ALJ did not err in failing to include an additional vision limitation. Regardless, even if the ALJ did err, it was a harmless error.

E.    DID THE ALJ ERR BY NOT INCLUDING THE USE OF A CANE IN HIS HYPOTHETICALS TO THE VOCATIONAL EXPERT?

Finally, Plaintiff attacks the ALJ's hypothetical to the VE because the ALJ failed to include the use of the cane in the hypothetical. (Doc. 16, p. 18-19). The Commissioner argues that the medical records correctly support the ALJ's reasoning that Plaintiff's cane use did not start until the end of the relevant period, thus justifying its exclusion. On this point, I agree with the Commissioner.

In the RFC, the ALJ noted that Plaintiff "would likely need to change position regularly to avoid an increase in his pain but he did not start using a cane until after the date last insured." (Admin. Tr. 30; Doc. 15-2, p. 31). Plaintiff refutes this conclusion. He argues that in his testimony, Plaintiff told the ALJ that he started using a cane about a year and a half before the hearing date (which occurred on April 10, 2019). (Doc. 16, pp. 18-19).  He then claims that medical records show that on December 4, 2017, Dr. Ahn recommended that Plaintiff use a cane. (*Id.*). Plaintiff asserts that his testimony establishes that he started using a cane right after it was recommended to him on December 4, 2017. (*Id.*). However, the Commissioner points out that Dr. Ahn did not actually give him a prescription for a cane until after the relevant period. (Doc. 17, pp. 25-27). On this point, I agree with the Commissioner; there is no reversible error.

In Plaintiff's administrative hearing, he had the following exchange with the

ALJ:

> Q: Now I see you have a cane. How long have you been using that cane?
> A: For about, like, a year-and-a-half now.
> Q: Has a doctor prescribed that cane?
> A: Yes.
> Q: Okay. What doctor?
> A. Dr. Ahn, A-H-N, at Geisinger.
> Q: Do you use that cane, for walking or standing? Or for both?
> A: For both.

(Admin. Tr. 61-62; Doc. 15-2, pp. 62-63).

Given Plaintiff's testimony, it is prudent to examine his visits with Dr. Ahn.

On December 4, 2017 (before the relevant period), Plaintiff visited physiatrist

Chulyun Ahn, M.D., complaining of back and neck pain. (Admin Tr. 1263- 67; Doc.

15-19, pp. 38-42). In her treatment plan dated that day, she noted: "fall precaution;

may consider cane." (*Id.*). On January 15, 2018 (after the relevant period) Plaintiff

appeared at a follow up visit with Dr. Ahn. (Admin. Tr. 1280- 84; Doc. 15-19, pp.

55- 59). On this visit, Dr. Ahn wrote: "use a cane as needed (prescription provided)."

(*Id.*). However, in future medical visits, providers noted that Plaintiff did not use a

cane. (*See* Admin. Tr. 904; Doc. 15-14, p. 46) (provider noted at an April 27, 2018

physical therapy visit that Plaintiff does not use a cane).

Keeping in mind the substantial evidence standard, I see no reason to overturn

the ALJ's holding that Plaintiff started using a cane after the end of the relevant

period. While Plaintiff argues that his testimony asserts that "he began using his cane

after it was recommended by Dr. Ahn," (Doc. 16, pp. 18-19), Plaintiff does not actually say that in his testimony. Further, on his December 4, 2017 visit, Dr. Ahn told Plaintiff to *consider* using a cane. Then on his next visit, on January 15, 2018, Dr. Ahn wrote that she gave him a prescription to use a cane, but in future medical visits, providers noted that he did not use a cane. To any extent there is ambiguity here, its resolution was best left to the ALJ as a federal court will not undertake a de novo review of the record. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (a federal court "must not substitute our judgment for that of the fact finder."). *See also, Doherty v. Comm'r of Soc. Sec.*, No. 11-cv-3701, 2012 WL 4507831, at *34 (D.N.J. Sept. 12, 2012) (affirming ALJ's RFC because "for nearly all of the time period at issue, Plaintiff did not use a cane.").

## V.  CONCLUSION

It will be ordered that Plaintiff's request that the Commissioner's decision be vacated and he receive a new hearing be denied as follows:

(1) The final decision of the Commissioner will be AFFIRMED.

(2) Final judgment should be issued in favor of Kilolo Kijakazi.

(3) The Clerk of Court shall close this case.

Date: March 30, 2022                   BY THE COURT

*s/William I. Arbuckle*
William I. Arbuckle
U.S. Magistrate Judge